IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PENNY MATHEWS,                          )
                                        )
             Plaintiff,                 )
                                        )
    vs.                                 )        CAUSE NO. 1:09-cv-478 SEB-DML
                                        )
BRONGER MASONRY, INC.,                  )
                                        )
             Defendant.                 )

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER**

Comes now, Plaintiff, Penny Mathews, by counsel, hereby submits this memorandum of law in support of her Motion to Reconsider the Findings of Fact and Conclusions of Law Following Bench Trial (Doc. #118) and grant in part of Defendant, Bronger Masonry, Inc. ("BMI"), Motion for Judgment on Partial Findings (Doc. #108).

**I.   INTRODUCTION**

This Court issued its Findings of Fact and Conclusions of Law Following Bench Trial on February 18, 2011 (the "Opinion").  Therein, this Court made certain factual findings with which Ms. Mathews takes issue.  Likewise, the Opinion omits a number of facts which Ms. Mathews believes should be acknowledged and included in the Opinion.  Finally, this Court entered certain conclusions of law with which Ms. Mathews takes issue.  Ms. Mathews addresses each of these items in turn.

Upon re-examination of the evidence and the law, Ms. Mathews requests that this Court reverse in part its February 18, 2011 decision, amend its decision to enter new findings of fact and conclusions of law, enter judgment against BMI for the state law claims of Ms. Mathews.

- 1 -

## II.  FACTUAL ISSUES

**A.      Salary for 40 Hour Workweek**

Ms. Mathews has some concerns regarding the facts found and omitted by this Court in the Opinion.  For instances, this Court found that Ms. Mathews talked to Dwayne Bronger, the owner and operator of BMI regarding the fact that her position was a 40 hour per work week position.   *See* (Doc. #118, p. 2).  However, this Court failed to note that Mr. Bronger testified that he assured Ms. Mathews that the position was a 40 hour per work week job and that her compensation was based upon a 40 hour work week.  *See* (Doc. #118).  With the exception that Mr. Bronger testified that Ms. Mathews was a salaried employment, the remaining testimony was not disputed.  The Opinion should be amended to include this important finding of fact.

**B.      When Vacation/Personal/Sick Time Earned**

This Court found based upon the testimony of Ms. Mathews that she earned and was eligible to use sick and vacation time immediately upon hiring and that Ms. Mathews earned and was eligible to use additional sick and vacation time as of January 1, 2008.  *See* (Doc. #118, pp. 2-3).  Now it is apparent from the Opinion that this Court did not find Ms. Mathews to be a credible witness if and when her testimony was contradicted by the testimony of Mr. Bronger. The exception is with regard to the testimony of Ms. Mathews as to when she earned and was eligible to use vacation time following her hiring and when she earned and was eligible to use additional vacation/personal/sick time during the course of her employment.   Mr. Bronger testified that Ms. Mathews did not earn and was not eligible to take any vacation time until after her first six (6) months of service.  Most importantly, Mr. Bronger testified that Ms. Mathews would not earn and was not eligible to take an additional two (2) weeks of vacation time and five (5) days of sick/personal time until her one-year anniversary.   As BMI has argued, there is

written evidence in the Record in the form of the alleged attachment to the March 19, 2007 e-mail from Mr. Bronger to Ms. Mathews that supports the testimony of Mr. Bronger.  Given the fact that this Court did not find Ms. Mathews to be credible when Mr. Bronger testified to the contrary, then it is inconsistent that this Court without explanation found the testimony of Mr. Bronger to not be credible in this one instance.  This inconsistent finding of fact should be vacated and the testimony of Mr. Bronger substituted.

**C.     Number of Missed Work Days**

This Court found that Ms. Mathews missed 25 days of work in addition to the holidays and stipulated days missed.  *See* (Doc. #118, p. 11).  This finding was based upon the fact that this was the number of work days in which there was no evidence that Ms. Mathews sent an e-mail or used Quickbooks.  *See* (Doc. #118, p. 21).  There are a number of issues with this factual finding.  First, this Court failed to recognize the undisputed testimony that Ms. Mathews did not have an e-mail account until approximately September 11, 2007.  Yet, nine (9) of the 25 days found by the Court that Ms. Mathews allegedly missed are prior to September 2007.  Thus, the finding of the Court is based only on the lack of Quickbooks records.  Respectfully, the lack of Quickbooks records is not sufficient to find that Ms. Mathews was completely absent from work on these nine (9) days in question in light of the overwhelming testimony of Ms. Mathews that she performed a myriad of tasks that did not utilize Quickbooks whatsoever.

More importantly, this Court's complete reliance upon electronic records of e-mails sent and Quickbooks usage is contrary to other findings correctly made by this Court and the undisputed testimony of Ms. Mathews.  Specifically, this Court correctly found that Ms. Mathews spent 20% of her time working on bids.  *See* (Doc. #118, p. 16).     This Court also correctly found that Ms. Mathews would take approximately half a day to work on a bid.  *See*

(Doc. #118, p. 6).  This Court failed to note the undisputed testimony of Ms. Mathews that there were days and weeks when she would work on multiple bids and that she did not use e-mail or Quickbooks when working on bid documents.  Thus, approximately one day a week (1 of 5 = 20%) Ms. Mathews was working on bids.  Moreover, based upon the undisputed evidence, Ms. Mathews could work entire days on multiple bids without using her e-mail or Quickbooks.

Finally, it is undisputed that Ms. Mathews used Excel the most out of any program and also used Quantum regularly.  As such, even if Ms. Mathews had work days where she worked on one bid for half of the day, it is quite conceivable that she spent the other half of the day working with Excel, Quantum, or performing one of the many other administrative tasks that she discussed at trial without ever using e-mail or Quickbooks the entire work day.  There are only five (5) days in 2008 that are being disputed be the parties: (1) January 28, 2008; (2) March 3, 2008; (3) April 11, 2008; (4) April 14, 2008; and (5) May 14, 2008.  Based upon this evidence and the infrequency in which it occurred, is it not conceivable that Ms. Mathews did in fact work on these five (5) dates and simply did not send an e-mail or use Quickbooks.  This Court should amend its findings to be consistent with its other findings and the undisputed testimony of Ms. Mathews.

**D.     Number of Unused Vacation/Personal/Sick Days At Separation**

Respectfully, this Court erred in failing to find that as a matter of fact, Ms. Mathews did have unused vacation/personal/sick days at the time of her separation.  This Court correctly found that there was no evidence presented at trial regarding a vacation, personal days, or sick days policies.  *See* (Doc. #118, p. 21).  There also is no evidence in the Record that Ms. Mathews could or did borrow future time off to be used prior to the date on which she earned or was eligible to use vacation/personal/sick time.  More importantly, BMI made no such argument or

- 4 -

cited any authority to support this practice.  Nonetheless, it appears that this Court found that Ms. Mathews had utilized all of her vacation/personal/sick time without regard to when Ms. Mathews earned and was eligible to use this time.  *See* (Doc. #118, p. 21).    This cumulative analysis is contrary to the facts in the Record.

### 1.      Vacation/Personal/Sick Time Earned On Anniversary Date

According to Mr. Bronger and BMI, Ms. Mathews earned and was eligible to take 15 vacation/personal/sick days as of April 2, 2008.   Following that date, at a maximum, Ms. Mathews took eight (8) vacation/personal/sick days - (1) April 11, 2008; (2) April 14, 2008; (3) April 28, 2008; (4) April 29, 2008; (5) April 30, 2008; (6) May 1, 2008; (7) May 2, 2008; and (8) May 14, 2008.  However, this Court found that BMI could legally deduct the personal days taken by Ms. Mathews on April 30, 2008 and May 1st and 2nd, 2008.  *See* (Doc. #118, pp. 13-14). This Court held that BMI made up the pay not paid to Ms. Mathews for the workweek ending April 28, 2008 by paying Ms. Mathews for these personal days.  Therefore, according to the Court, Ms. Mathews was not paid personal days for April 30, 2008 and May 1st and 2nd, 2008. Consistent with the prior rulings of this Court, Ms. Mathews only used a maximum of five (5) vacation/personal/sick days after April 2, 2008.  Thus, at the minimum, this Court should find that Ms. Mathews had 10 accrued, unused vacation/personal/sick days as of her separation of employment.  At a daily rate of $169.23 per day, Ms. Mathews is owed **$1,692.30** in unpaid wages.  However, this number could be higher should this Court find that Ms. Mathews was not absent on April 11, 2008, April 14, 2008, or May 14, 2008 as argued above.  *See infra.* Sec. II(C).

### 2.    Vacation/Personal/Sick Time Earned On January 1, 2008

Assuming this Court does not amend its findings of fact to make them consistent, then Ms. Mathews earned and was eligible to take 15 vacation/personal/sick days as of January 1, 2008.  Following that date, at a maximum, Ms. Mathews took ten (10) vacation/personal/sick days - (1) January 8, 2008; (2) January 28, 2008; (3) February 13, 2008; (4) February 26, 2008; (5) March 3, 2008; (6) April 11, 2008; (7) April 14, 2008; (8) April 28, 2008; (9) April 29, 2008; and (10) May 14, 2008.[1]  Thus, at the minimum, this Court should find that Ms. Mathews had 5 accrued, unused vacation/personal/sick days as of her separation of employment.  At a daily rate of $169.23 per day, Ms. Mathews is owed **$846.15** in unpaid wages.  However, this number could be higher should this Court find that Ms. Mathews was not absent on January 28, 2008, March 3, 2008, April 11, 2008, April 14, 2008, or May 14, 2008 as argued above.  *See infra.* Sec. II(C).

### E.    The Administrative Duties of Ms. Mathews

### 1.    Delegated Authority

It appears that this Court found that Ms. Mathews had delegated authority with regard to her "dealings with the company's outside accountants, its bank and third party vendors."  *See* (Doc. #118, p. 17).  However, the Record has no evidence whatsoever that Ms. Mathews had any authority to chose with whom BMI did business, how the company's financial should be prepared, whether the company should take a loan and in what amount, what materials the company should purchase for jobs and which vendor should be paid and when.  Rather, the evidence in the Record establishes that Mr. Bronger and a couple of other managers had the authority to make these decisions.  The Opinion states that Ms. Mathews "had authority to stamp

---

[1] As previously discussed, this Court has found that Ms. Mathews did not take paid personal time on April 30, 2008 and May 1st and 2nd, 2008.  *See infra.* Sec. II(D)(1).

checks on behalf of the company in order to make needed purchases."  *See* (Doc. #118, p. 17). The Record also establishes that Mr. Bronger instructed Ms. Mathews as to when and why she was to use the stamp.  There is no evidence that Ms. Mathews had independent authority to make any purchases beyond the instructions given by Mr. Bronger.  These findings do not establish that Ms. Mathews had delegated authority.

### 2.     Performance of Duties Without Direct Supervision

This Court is correct that Ms. Mathews worked substantial amounts of time at home without direct supervision.  *See* (Doc. #118, p. 17).  However, the evidence in the Record establishes that the work that Ms. Mathews performed at home was performed based upon the specific instructions and prescribed procedures provided to Ms. Mathews by Mr. Bronger and the other managers of BMI and/or the accountants of BMI.  These findings do not establish that Ms. Mathews worked without direct supervision.

### 3.     Primary Duties

It does not appear from the Opinion that the Court made a finding as to what were the primary duties of Ms. Mathews.  *See* (Doc. #118).  It does not appear that the Court found that any of the duties for which Ms. Mathews allegedly had been delegated authority was a primary duty.  *See* (Doc. #118).

## F.     Ms. Mathews was an Hourly Employee

Ms. Mathews notes that she disputes the finding of the Court that she was a salaried employee, but believes it would be fruitless to attempt to argue this point.

## III.  ARGUMENT

**A.      Application of Administrative Exemption**

**1.      No Finding of Enterprise Coverage**

This Court did not find that BMI was an enterprise pursuant to the FLSA.  *See* (Doc. #118, p. 11).  As a matter of law, if BMI is not an enterprise pursuant to the FLSA, then the administrative exemption of the FLSA is not applicable to this case.  This Court cannot find Ms. Mathews to be exempt under a law that does not apply to her employer.  As a matter of law, the conclusion that the administrative exemption applies to Ms. Mathews must be vacated.  This Court must analyze the claims of Ms. Mathews pursuant to Indiana's Wage Payment Statute.

**2.      Lack of Findings to Support Exemption**

Based upon the findings articulated in the Opinion, the facts do not warrant application of the Administrative Exemption in this case.

**B.      Wage Payment Statutory Claims**

**1.      Vacation/Personal/Sick Days**

Ms. Mathews is entitled to liquidated damages for the failure of BMI to timely pay her accrued, unused vacation/personal/sick days following her separation of employment.  At a minimum, assuming that this Court finds that Ms. Mathews is owed five (5) days, then she is entitled to liquidated damages of **$1,692.30** ($846.15 x 10% x 20 days) plus all attorney fees associated with proving this claim.  *See* I.C. §22-2-5-2.  Assuming that this Court finds that Ms. Mathews is owed ten (10) days, then she is entitled to liquidated damages of **$3,384.60** ($1,692.30 x 10% x 20 days) plus all attorney fees associated with proving this claim.  *See* I.C. §22-2-5-2.  Of course, should the Court find that Ms. Mathews did work on any of the disputed days in 2008, then she would be entitled to an additional $338.46 per day.

### 2.      Unpaid Hours Worked

Given that the FLSA does not apply to this matter as a matter of law, Ms. Mathew's claim for unpaid hours falls under the Wage Payment Statute.  Based upon the testimony of Ms. Mathews and Mr. Bronger, Ms. Mathews was a salaried, non-exempt employee whose salary covered a 40 hour workweek.  *See infra.* Sec. II(A).  Thus, the salary of Ms. Mathews covered any paid holidays, paid vacation/personal/sick days and hours worked up to 40 hours each week. Any and all hours worked by Ms. Mathews beyond those first 40 paid hours have not been paid to Ms. Mathews to date.  Therefore, Ms. Mathews is entitled to be paid for each hour that she worked and was not paid under state law.  Ms. Mathews requests that this Court make findings as to the number of hours worked and the number of hours that have not been paid to date for each week worked by Ms. Mathews.  This Court should then enter judgment against BMI for these unpaid hours at the applicable hourly rate, plus liquidated damages.

## IV.  CONCLUSION

Based upon the foregoing, Ms. Mathews hereby requests that the Court vacate in part its February 18, 2011 decision, amend its decision to enter new findings of fact and conclusions of law, enter judgment against Bronger Masonry, Inc. for the state law claims of Ms. Mathews, and for all other just and proper relief.

Respectfully submitted,

WELDY & ASSOCIATES


s/Ronald E. Weldy
Ronald E. Weldy
Counsel for Plaintiff,
Penny Mathews

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served via e-mail on this 18th day of March, 2011 to the following:

Michael L. Einterz
einterzfirm@aol.com

s/Ronald E. Weldy
Ronald E. Weldy
Weldy & Associates
8383 Craig Street
Suite 330
Indianapolis, IN 46250
Tel: (317)842-6600
Fax: (317)842-6933
E-mail: weldy@weldylaw.com