UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PENNY MATHEWS,                    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        CASE NO. 1:09-cv-00478-SEB-DML
                                  )
BRONGER MASONRY, INC.,            )
                                  )
            Defendant.            )

# Report and Recommendation Regarding
## Plaintiff's Motion for Attorney Fees

### Introduction

The Honorable Sarah Evans Barker designated this magistrate judge, as provided by 28

U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(a), to conduct a hearing and issue a report and

recommendation to address the effect on plaintiff Penny Mathews's motion for attorneys' fees

(Dkt. 126 and Dkt. 139) of a settlement agreement and release she entered into with defendant

Bronger Masonry, Inc. ("Bronger").  *See* Dkts. 142, 143.  The magistrate judge held a hearing on

August 11, 2011, at which the parties had the opportunity to present evidence and argue their

legal positions.  Having considered the evidence, the parties' arguments, and the applicable law,

the magistrate judge now makes this report and recommendation.

### Findings

**A.  This Federal Litigation between Ms. Mathews and Bronger**

Ms. Mathews sued Bronger, her former employer, for failing to pay overtime wages in

violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., for failing timely to pay

wages in violation of Indiana's wage *payment* statute at Ind. Code ch. 22-2-5, and for failing

timely to pay wages after the termination of Ms. Mathews's employment in violation of Indiana's wage *claims* statute at Ind. Code ch. 22-2-9.[1]  Ms. Mathews's wage *claims* action was determined against her on summary judgment because only Indiana's Commissioner of Labor may bring a claim under the wage claims statute unless she has assigned the claim to the terminated employee.  (*See* Dkt. 95 at p. 8).  Ms. Mathews asked the court to reconsider that ruling, and the court took the motion under advisement pending trial.

The case was tried to the court on December 13 and 14, 2010.  Following post-trial briefing, the court entered its findings of fact, conclusions of law, and judgment.  The court denied Ms. Mathews's request that the court reconsider its summary judgment ruling on unpaid wages for vacation and personal time.  (Dkt. 118)  The court also found in favor of Bronger on the FLSA overtime pay claim but in favor of Ms. Mathews on a portion of her claim under Indiana's wage payment statute.  The court entered judgment on February 18, 2011, "in favor of Plaintiff and against Defendant on Plaintiff's claim for unpaid salary under Ind. Code § 22-2-5-2 in the amount of $676.92 plus reasonable attorneys' fees related to that claim."  Judgment was entered against Ms. Mathews on all other claims.  (Dkt. 119)

On May 2, 2011, Ms. Mathews's counsel filed a motion—ostensibly in his own name— for attorneys' fees with respect to her $676.92 victory under the wage payment statute, asking the court to award him $20,604.00 in statutory attorneys' fees.  (Dkt. 126)  The supporting memorandum of law states that Ms. Mathews, as a prevailing plaintiff, "is entitled to statutory attorneys' fees as mandated by I.C. § 22-2-5-2."  (Dkt. 127 at p. 6)  Counsel later filed a supplement to the fee request on June 10, 2011, increasing it to $23,226.50 (Dkt. 139).

---

[1]     *See St. Vincent Hospital and Health Care Center, Inc. v. Steele,* 766 N.E.2d 699, 702-705 (Ind. 2002) (addressing distinctions between wage payment and wage claims statutes).

**B.  The State Court Litigation between Bronger and Ms. Mathews**

In addition to this litigation, Ms. Mathews and Bronger were adversaries in a case filed by Bronger in state court in Boone County, Indiana.  In that case, Bronger obtained a judgment against Ms. Mathews on May 13, 2010 (about seven months before the trial in this case), for $6,218.48 plus post-judgment interest and costs of collection, including its attorneys' fees.  Ms. Mathews represented herself in the Boone County case; Mr. Weldy—her counsel here—did not represent her in that case.  Bronger knew that Ms. Mathews was *pro se* in the Boone County litigation.

**C.  Bronger's Initial Settlement Offer**

After this court's entry of judgment for $676.92 plus reasonable attorneys' fees with respect to the claim on which Ms. Mathews prevailed here, Bronger sent separate letters, dated February 22, 2011, to Ms. Mathews and to Mr. Weldy proposing a settlement addressing both cases.  (*See* Dkts. 133-1 and 133-2.)  Bronger offered to offset Ms. Mathews's federal court judgment against the amount she owed at that time to Bronger on its state court judgment (which would leave Ms. Mathews owing Bronger about $6,000).  With respect to the attorney fees claim in this case, which had yet to be awarded in a liquidated sum, Bronger offered to value the fees at approximately $1000, which, when subtracted from the $6,000, would leave Ms. Mathews owing $5,000 to Bronger.  Bronger's letter to Mr. Weldy also demanded a separate, unspecified sum from Ms. Mathews or Mr. Weldy to settle a sanctions motion that Bronger stated it planned to file with this court for the plaintiff's alleged pursuit of "frivolous and groundless litigation." (*See* Dkt. 133-1 at p. 2.)[2]  Bronger's letter to Ms. Mathews did not mention Bronger's separate

---

[2]     The letter requests that the parties separately negotiate the threatened sanctions matter and suggests a proposal that at least covers $10,000 in fees Bronger incurred immediately before

sanctions demand against Ms. Mathews or Mr. Weldy. It simply proposed an offset against Bronger's Boone County judgment of "both the $676.92 judgment and a reasonable attorney fee of nearly twice that amount," which would leave Ms. Mathews owing Bronger $5000. (Dkt. 133-2) Bronger also stated it would consider payment plans if Ms. Mathews consented to the offset proposal. (*Id.*)[3]

Neither Mr. Weldy nor Ms. Mathews responded to Bronger's February 22, 2011 letters. At some point, however, the parties agree that Mr. Weldy and defense counsel later spoke by phone. Mr. Weldy recalls that he told Bronger counsel that an "offset made sense," that he did not represent Ms. Mathews in the state court case, and that Bronger counsel should deal with Ms. Mathews directly on that. On May 5, 2011 (the day before a proceedings supplemental hearing in the state court proceeding), Ms. Mathews sent a fax to Bronger's counsel asking Bronger to pay the $676.92 federal judgment directly to her. (*See* Affidavit of Penny Mathews, Dkt. 138-1, ¶ 3.)

### D. The Settlement Agreement Signed at the Courthouse

Ms. Mathews was ordered to appear on Friday, May 6, 2011 for a proceedings supplemental hearing in the Boone County case in connection with Bronger's efforts to collect its judgment. At the courthouse before the hearing, Bronger's counsel made a new offer to Ms.

---

and during trial. As noted below, the sanctions motion Bronger ultimately filed includes requests ranging from about $93,000 to about $6000.

[3] In Bronger's separate letter to Mr. Weldy (which presumably Bronger expected that Mr. Weldy would share with Ms. Mathews consistent with his professional obligations (*see* Ind. R. Prof. Cond. 1.4), Bronger stated that because the fee agreement between Mr. Weldy and Ms. Mathews was a contingent fee agreement, then the reasonable attorneys' fee "is likely limited to $300." Bronger said it was acting "in the spirit of settlement and quick resolution" when it offered to value the fee at about $1,000. (*See* Dkt. 133-1 at p.1.) As explained at note 13 *infra*, Bronger's assessment of the value of the fee claim was based on an inaccurate statement of the law.

Mathews and gave her a three-page, single-spaced Settlement Agreement and Release for her to consider. Bronger's counsel told her orally that she should obtain advice from counsel before signing the document and that he would request a continuance and resetting of the proceedings supplemental hearing so that she could obtain advice from counsel. Further, the written agreement he gave her to consider states that "all parties understand that they should seek the advice of counsel prior to entering into this agreement, and by signing this agreement acknowledge that no further review of this Agreement by legal counsel is warranted." (Dkt. 133-3, ¶ 5)

The agreement's terms settled all claims, including the attorneys' fees that had been awarded in this case but which had not been reduced to a sum certain and final judgment, in exchange for Ms. Mathews's agreement to pay a total of $2,000 to Bronger and to release Bronger from any possible claim she may have against Bronger, "including, but not limited to claims for attorneys' fees," and any claim or cause of action arising out of or relating to anything occurring up to the time of the agreement, whether the claim had accrued or was known to Ms. Mathews. Ms. Mathews's release of Bronger takes up 27 lines of single-spaced type. The agreement provided that Ms. Mathews's release of Bronger was effective immediately, that the $2,000 payment must be made by June 21, 2011 (about six weeks later) in the form of a cashier's check, and that if Ms. Mathews failed timely to make the payment, she would incur a $500 late fee on the sixth day past the due date and an additional $100 late fee for each day payment is late thereafter. Once she timely made her payment(s), Bronger would release Ms. Mathews from the state court judgment.

Bronger's release of Ms. Mathews was not reciprocal to Ms. Mathews's release of Bronger. (*See* Dkt. 133-3.) Notably, Bronger's release of Ms. Mathews did not include

Bronger's threatened request for sanctions against Ms. Mathews and her counsel, and Bronger ultimately did file a motion for sanctions against both Ms. Mathews and Mr. Weldy after Ms. Mathews had signed the settlement agreement and had begun making the payments under it, even while Bronger was seeking enforcement of the settlement agreement.[4] Ms. Mathews asserts by affidavit that Bronger's counsel told her before handing her the proposed settlement agreement that its collection efforts could include foreclosing on her house, taking her car, freezing her bank accounts, and garnishing her wages. (Dkt. 138-1, ¶¶ 5-6)

There in the courthouse hallway, Ms. Mathews apparently decided she did not need counsel. She asked Bronger to allow her to pay the $2,000 sum in $50 monthly installments that she would pay by cashier's check or money order to Bronger and deliver to its offices in Zionsville, Indiana. No other provisions of the typed agreement were changed, including the $500/$100 late fee provision. Bronger agreed to Ms. Mathews's payment plan as handwritten on the document. Ms. Mathews signed the agreement, and Bronger's lawyer signed the agreement on Bronger's behalf.

### E. This Dispute

The following Monday, May 9, 2011, Bronger sent a letter to Mr. Weldy advising him that Ms. Mathews had released Bronger from all claims, including attorneys' fees, and that if Mr. Weldy did not withdraw the pending motion for fees in this case by Friday, May 13, Bronger would file a notice of settlement and request that the court close the case. Also on May 9, Bronger filed a motion requesting a date certain, to May 20, to file a response to the motion for attorneys' fees. (Dkt. 131)

---

[4]     *See* Dkt. 140. The sanctions motion seeks Bronger's attorney fees (apparently totaling over $93,000) for the plaintiff's alleged pursuit of meritless claims as well as for her counsel's request for fees.

Bronger's May 9 letter triggered a telephone response from Mr. Weldy, during which he asserted that he had not consented to Bronger's counsel speaking with Ms. Mathews about the attorney fee claim in this action or for that claim to be included in the offset. On Tuesday, May 10, 2011, Bronger sent a joint letter to Ms. Mathews and Mr. Weldy explaining its position that Ms. Mathews (and not her attorney) had full authority to compromise her claims, including the attorney's fee award, and that Ms. Matthews and Bronger, through its counsel, had acted on this principle. Bronger also explained that although Mr. Weldy had told Bronger that Bronger must deal directly with Ms. Mathews regarding the Boone County matter, it believed it also had permission to discuss directly with Ms. Mathews settlement of all facets of the federal court judgment, including the fee award, because the very nature of its settlement proposal was global. The letter also pointed out that Mr. Weldy had said that settlement of the Boone County case must go through Ms. Mathews. (*See* Dkt. 133-5.) Bronger further stated that it would accept Ms. Mathews's decision not to "honor" the agreement so long as its counsel was so informed "in writing by both of you through separate correspondence" "no later than Friday, May 13, 2011." (*Id.*) Otherwise, Bronger would "consider the settlement agreement to remain in effect." (*Id.*) In short, Bronger offered to undo the settlement agreement if both Ms. Mathews and Mr. Weldy requested it.

Neither Mr. Weldy nor Ms. Mathews responded to the May 10 letter and to Bronger's offer to undo the settlement agreement.

On May 17, 2011, Bronger filed a notice of settlement, advising this court that Bronger and Ms. Mathews had entered into a settlement agreement and that Ms. Mathews had released her claim in this case for attorneys' fees. Ms. Mathews then moved to strike Bronger's notice of settlement, arguing that although her counsel consented to Bronger discussing with Ms. Mathews

the set-off of her federal judgment of $676.92, his consent to deal directly with her did not extend to the attorney fees in this case, a matter on which she was represented by counsel. (Dkt. 135) Ms. Mathews asserted that because communications concerning the attorneys' fees were conducted without her counsel's consent, the settlement agreement "is not binding in any fashion" (*id.*, ¶ 10), and should be withdrawn by Bronger to avoid or mitigate violation of Ms. Mathews's right to legal representation, as discussed in *In re Anonymous,* 819 N.E.2d 376 (Ind. 2004).

Ms. Mathews's counsel told this court that until Bronger filed its notice of settlement and copies of its February 22, 2011 letters, he had not known that Bronger had communicated directly with Ms. Mathews via its February 22, 2011 letter to her. Mr. Weldy asserts he would have taken steps to affirmatively object to any communications with Ms. Mathews regarding the fees had he been aware of the letter to her. These assertions are undermined by the fact that Bronger's February 22 letter to Mr. Weldy *says* that Bronger would be sending the agreement it had outlined in its letter directly to Ms. Matthews. Mr. Weldy further explains that he did not respond to the February 22, 2011 letter addressed to him because he viewed the proposal as an "unrealistic" and "bad" settlement offer not deserving a response. (Dkt. 138) Mr. Weldy argues that the fees on Ms. Mathews's Indiana statutory wage claim are fees "claimed by counsel" that Ms. Mathews did not have authority to compromise. By affidavit, Ms. Mathews asserts that she believed that the settlement concerned only the $676.92 amount, that she "never knowingly agreed to settle the remainder of this federal case," and that she "does not agree to settle this federal case under the terms of the settlement agreement." (Dkt. 138-1, ¶¶ 16-17)

**<u>Analysis</u>**

In determining the matters presented for decision, the court must analyze four related yet distinct issues. First, despite the assertion in Ms. Mathews's affidavit that she seeks to rescind the settlement agreement, she requested at the hearing that the court undo only the portion of the agreement that she (or more accurately, Mr. Weldy) does not like: her release of the attorney fee claim. The court will first address (but need not tarry long with) this threshold issue. Second, the court will examine Ms. Mathews's (or more accurately, Mr. Weldy's) principal contention that the Indiana wage payment statute on which Ms. Mathews partially prevailed at trial creates an independent fee claim that belongs to the lawyer, not to the party, thus rendering Ms. Mathews's purported compromise of it ineffective. Third, assuming that a fee claim belongs to the client, the court will address whether the client is nevertheless precluded from compromising it without her lawyer's acquiescence. Finally, the court will address Ms. Mathews's alternative argument that the settlement agreement was the product of an inappropriate communication between Bronger's counsel and Ms. Mathews as to a matter for which she was represented by counsel, thereby voiding the agreement.

**A. If settlement of the attorney fee portion of the agreement is not enforceable, then the settlement agreement as a whole is not enforceable.**

As an initial matter, the court finds that Ms. Mathews cannot pick and choose the parts of the settlement agreement to be enforced. That is, she is not entitled to avoid having settled the attorney fee portion of her Indiana wage payment claim but at the same time enforce a settlement by Bronger of its state court judgment in exchange only for an offset of $676.92 and installment payments totaling $2000. If, as she contends, the circumstances surrounding the purported settlement of the attorney fee portion of her Indiana wage payment statutory claim render that compromise voidable, then the whole settlement agreement is unenforceable.

9

Based on the evidence presented, the compromise of the yet-to-be liquidated attorney fee claim was a material and central term of the settlement agreement, without which the entire contract is not enforceable. *See Harbour v. Arelco, Inc.,* 678 N.E.2d 381, 385 (Ind. 1997) (where primary purpose of contract is not frustrated by eliminating unenforceable term, then entire contract is not rendered unenforceable); *Heritage Devel. of Indiana, Inc. v. Opportunity Options, Inc.,* 773 N.E.2d 881, 891 (Ind. Ct. App. 2002) (failure of part of a contract renders unenforceable remainder of contract unless remainder is severable; court should determine whether by the contract's "terms, nature and purposes it contemplates and intends that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent, or whether it could be completed in part only").

**B. The attorney fee claim does not "belong" to Ms. Mathews's counsel.**

The court will now turn to the parties' arguments regarding the enforceability of Ms. Mathews's purported agreement to settle the attorney fee portion of her claim. The relevant statutory provision regarding attorneys' fees states:

> [I]n any suit brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

Ind. Code § 22-2-5-2.

Mr. Weldy argues that because the court had entered judgment in favor of Ms. Mathews on her substantive claim for wages under this statute, the attorneys' fees under the statute belong to *him*, and not to Ms. Mathews, leaving her without authority to compromise the claim. Counsel bases his argument primarily on *Kleine-Albrandt v. Lamb,* 597 N.E.2d 1310 (Ind. Ct. App. 1992). In *Lamb,* the trial court had awarded judgment to an employee for unpaid wages but denied attorneys' fees under Ind. Code § 22-2-5-2 because the employee had not incurred any

fees.  In that case, the plaintiff's counsel was employed by a nonprofit student legal services organization that provided the legal services on a *pro bono* basis, and any fee award would benefit the legal interns of the organization.  The trial court reasoned that the statutory fee provision was intended to ensure adequate legal representation through a client's regular employment of an attorney and that an award to *pro bono* counsel was not authorized by the statute.  *See id.* at 1311**.**

The court of appeals reversed.  First, the *Lamb* court found that the statute made an award of reasonable attorneys' fees mandatory.  Second, it found that the statutory shifting of fees was designed (1) to ensure a litigant's access to the courts through its attraction of competent legal counsel and (2) to deter an employer's violation by requiring the non-compliant employer to pay its employee's attorney fees.  These purposes, in addition to authority from other jurisdictions awarding fees when the prevailing litigant was represented by a legal services or other *pro bono* organization, persuaded the court that a reasonable fee must be awarded even though the prevailing litigant had not incurred and did not owe any fees to her lawyer.   The court was concerned, however, that the employee should not be unjustly enriched by receiving a fee award that she could keep for herself.  On this matter, the court stated:

> We do recognize that any award directly to Kleine-Albrandt would result in a windfall in this action, and we hold that the award must be made directly to Student Legal Services.  We believe that such an award is consistent with the language of the statute in that the statute does not state that the award of fees is to be made to the plaintiff but rather that the court shall 'tax and assess . . . a reasonable fee for the plaintiff's attorney or attorneys.'  I.C. § 22-2-5-2.  *See also P.B. v. T.D.* (1990), Ind., 561 N.E.2d 749, 750-751 (recognizing that attorney's fee award made pursuant to dissolution action may be enforced by attorney in her own name).

*Id.* at 1313.

*Lamb* does not support the conclusion the plaintiff urges here. First, contrary to Mr. Weldy's argument, *Lamb* does not stand for a broad proposition that an attorney fee claim under Ind. Code § 22-2-5-2 *belongs* to the lawyer. Rather, its import, as recognized in subsequent cases, is that a trial court must award fees to the prevailing plaintiff even if she has *pro bono* counsel to whom she does not owe fees *and* that a trial court has the equitable power to award payment of the fee directly to the plaintiff's counsel. The argument that section 22-2-5-2 goes further and creates a unique—or at least anomalous—provision for a right to fees that belongs to counsel is apparently grounded in the reference in the statute to the fee being "for" the attorney. But that is not a meaningful distinction. For example, after *Lamb,* the Indiana Court of Appeals addressed a different fee-shifting statute in another case involving *pro bono* counsel, and explained that this particular statutory language in *Lamb* (that the fee is "for" the plaintiff's attorney) was not dispositive in *Lamb* or necessary "to justify an award directly to the attorney in this type of *pro bono* situation." *Pinnacle Properties v. Saulka,* 693 N.E.2d 101, 106 n.4 (Ind. Ct. App. 1998). *See also Payday Today, Inc v. Hamilton,* 911 N.E.2d 26, 35-36 (Ind. Ct. App. 2009) (interpreting *Lamb* as holding that a fee award may be made when the "prevailing party" is represented at no charge by a *pro bono* organization, and authorizing the trial court to "direct" the award to the organization to avoid a windfall to the client who did not incur a fee). The plaintiff here has tried to stretch the holding of *Lamb* far beyond the confines of the decision.[5]

---

[5]  In an earlier decision in this district court awarding fees under the wage payment statute, the court ordered the defendant employer to pay the fee award directly to Mr. Weldy, and it cited the *Lamb* decision as holding that an award of fees under Ind. Code § 22-2-5-2 must be made directly to the attorney. *See Luedike v. Sprint Nextel Corp.,* Case No. 1:07-cv-01082, Dkt. 248 at p.10 (S.D. Ind. March 31, 2011). Mr. Weldy cited this decision at the hearing as further support for his position. But the court's conclusion in *Luedike* does not compel the conclusion that a fee claim under section 22-2-5-2 belongs to counsel. First, in *Luedike,* the argument that the fee must be paid to the attorney was raised in a reply brief, and the court did not have the benefit of an adversarial presentation of the issues when it adopted Mr. Weldy's interpretation of *Lamb*

Second, the plaintiff's reliance on *Lamb* is misplaced because the *Lamb* court's discussion of the statutory language left out a phrase significant to the issue presented in this case. Section 22-2-5-2 requires the court to "tax and assess *as costs* in said case a reasonable fee for the plaintiff's attorney or attorneys." "Costs," as that term is used in Indiana statutes and procedural rules (as well as federal statutes and procedural rules), is a form of relief accorded a prevailing *party*, not her lawyer. *See* Ind. Code § 34-52-1-1(a) ("In all civil actions, the party recovering judgment shall recover costs. . . ."); Ind. R. Trial P. 54(D) ("Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party. . . ."). *See also* Fed.R.Civ.P. 54(d). The court is unaware of any circumstance where "costs" are awarded to a prevailing lawyer.

Third, the phrase "*for* the plaintiff's attorney" (emphasis added) is more reasonably construed to refer to the services provided by the attorney than as a means to express ownership of the fee by the attorney. The latter construction would create a host of conflicts between an attorney and client inconsistent with the lawyer's responsibilities under the Rules of Professional Conduct. For example, under Rule 1.8(i) of the Indiana Rules of Professional Conduct, a lawyer is prohibited from acquiring "a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client."[6] But if a right to the fee under Ind. Code § 22-2-5-2 belongs to the lawyer as an independent claim the lawyer can enforce, then any lawyer

_____

without further analysis. Second, the issue presented here was not squarely before the court in *Luedike*. There, the court relied on *Lamb* only in concluding that the fee award would be treated separately from the parties' offsetting bills of costs. Third, *Luedike* deals with *payment* of the fee, not ownership of the fee. Consistent with *Lamb*, a court has the discretion to direct payment of the fee award to the attorney. That is a far cry from the proposition Mr. Weldy urges in this case—that the claim belongs to him and cannot be compromised by his client.

[6]    Contingent fee contracts are an exception, and those contracts must meet certain criteria under the rules of professional conduct. *See* Ind. R. Prof. Cond. 1.5.

prosecuting a case under section 22-2-5-2 to obtain relief for his client would be sharing the cause of action with her client.

In the absence of authority far more explicit than the *Lamb* court's observation that the statutory language was "consistent" with the court ordering the defendant to pay the fee award directly to the lawyer to avoid a windfall to the client, the court will not construe the statute to vest the lawyer with ownership of the fee claim. The statute bears all the traditional indicia of a fee-shifting statute in favor of a prevailing *party*—including its explicit language to tax attorneys' fees as costs—designed to encourage its enforcement with competent counsel and to deter violation. *See Jackson v. ArvinMeritor, Inc.,* 2009 WL 1941335 at *1 (S.D. Ind. July 2, 2009) (referring to Ind. Code § 22-2-5-2 as authorizing an award of fees to a "prevailing plaintiff"); *St. Vincent Hospital and Health Care Ctr., Inc. v. Steele,* 766 N.E.2d 699, 706 (Ind. 2002) (Boehm, J., concurring) ("I write separately to observe that the facts of this case dramatize the point that [Ind. Code § 22-2-5-2] confers on all employees the right to recover treble damages and attorney's fees for failure to pay wages. . . . A statute providing one party with treble damages and attorney's fees is a very substantial deterrent to an employer's playing fast and loose with wage obligations.")

In sum, the magistrate judge finds that the language of Ind. Code § 22-2-5-2 should not be construed to vest Mr. Weldy with ownership of the fee, or with an independent claim to the fee, or even with an automatic right to a court order directing payment to the attorney.[7]

---

[7]     It may be, in the usual case, that when the fee amount is reduced to a sum certain by judgment, a court should order fees to be paid directly to counsel to foster the statute's purpose of attracting competent legal counsel to represent employees whose wages were improperly withheld, and as a reflection of the fact that an award is calculated based on the efforts expended by counsel and is generally tied to the number of hours expended by counsel at a reasonable hourly rate. *See Silverman v. Villegas,* 894 N.E.2d 249, 262-63 (Ind. Ct. App. 2008) (discussion of determining amount of reasonable fee in statutory fee case). Payment to the prevailing

**C. Ms. Mathews had the *right* to compromise her attorney fee claim.**

The court has not found any cases decided under Indiana law regarding a client's right to compromise a statutory fee claim, although Indiana courts have consistently recognized a client's right in general to compromise her claims without her attorney's consent. *See Olczak v. Marchelewicz,* 188 N.E. 790, 792 (Ind. Ct. App. 1934) (before judgment in favor of client, attorney cannot acquire interest in client's cause of action that would prevent the client from compromising or releasing the claim without the lawyer's consent). Many courts, including the United States Supreme Court, have addressed a client's right to compromise a statutory fee claim in the context of similar statutory schemes such as consumer rights and civil rights statutes. Some of these cases also address the client's right to compromise the fee claim without the consent of her lawyer.

In *Evans v. Jeff D.,* 475 U.S. 717 (1986), the Supreme Court ruled that a settlement of a class action asserting claims subject to a fee-shifting statute may include as a term of the settlement the class's waiver of the fee claim. The district court had approved the settlement *in toto*, but the Ninth Circuit Court of Appeals invalidated the fee waiver while leaving the remainder of the settlement in place. It did so based in part because the defendant's settlement offer required the simultaneous negotiation of compensation to members of the class on their substantive claims and negotiation of statutory attorneys' fees. That circumstance, the Ninth Circuit held, created a conflict between the lawyers and their clients that had the effect of

---

plaintiff may, in some cases, result in a windfall to the plaintiff or make the lawyer's collection from his client unduly difficult. But the court finds nothing in the statute or any case law (except in the *pro bono* situation addressed in *Lamb, Pinnacle Properties*, and *Payday*) that requires a court to direct payment of a fee award to the attorney. Indiana dissolution statutes provide an illustrative contrast; they explicitly permit the court to order one spouse to pay a reasonable amount of the other's attorneys' fee and to "order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name." Ind. Code § 31-15-10-1.

frustrating the objectives of the fee-shifting statute.  The Supreme Court reversed, and in doing

so stressed that the attorneys' fee portion of the claim was a bargaining chip in the "arsenal" of

the statute's remedies, and was neither owned by the attorneys nor was it nonwaivable or

nonnegotiable.  *See* 475 U.S. at 731-32:

> [W]hile it is undoubtedly true that Congress expected fee shifting to attract
> competent counsel to represent citizens deprived of their civil rights, it neither
> bestowed fee awards upon attorneys, nor rendered them nonwaivable or
> nonnegotiable; instead, in added them to the arsenal of remedies available to
> combat violations of civil rights, a goal not invariably inconsistent with
> conditioning settlement on the merits on a waiver of statutory attorney's fees.

Later, in *Venegas v. Mitchell,* 495 U.S. 82 (1990), the Court addressed the enforceability

of a client's contract to pay his attorney a contingency fee that turned out to be greater than the

statutory fee awarded against the defendant.  The court reiterated that under 42 U.S.C. § 1988,

which authorizes fees to the prevailing party in federal civil rights actions, it is the *party's* right

to "waive, settle, or negotiate" the fees.  *Id.* at 88.  In holding that a client could contract to pay

his attorney more than the statutory fee the court might eventually award, the court noted it

would be odd to permit a client greater rights to negotiate his fee claim with his adversary than

with his own lawyer.  *Id.*

The courts that have addressed the issue have generally ruled that statutory fee claims

belong to the party and, as such, are hers to waive, settle, or otherwise compromise.  *Zeisler v.

Neese,* 24 F.3d 1000, 1001 (7th Cir. 1994) (collecting cases); *Panola Land Buying Ass'n v. Clark,*

844 F.2d 1506 (11th Cir. 1988) (attorney does not have separate claim for fees under the Equal

Access to Justice Act; those fees may be waived by the client);[8] *Freeman v. B&D Associates,*

---

8       An earlier case from the Eleventh Circuit, *James v. Home Construction Co.,* 689 F.2d
1357 (11th Cir. 1982), is frequently cited to support the proposition that an attorney has an
independent right to seek fees under the federal Truth-in-Lending Act.  In the later *Panola*
decision by the Eleventh Circuit, though based on the EAJA and not TILA, the Eleventh Circuit

790 F.2d 145 (D.C. Cir. 1986) (right to recover attorneys' fees under the Truth-in-Lending Act belongs to the client and was waived in settlement agreement; attorney has no independent cause of action to seek those fees).

The Seventh Circuit's decision in *Zeisler v. Neese,* 24 F.3d 1000 (7th Cir. 1994), addressed the issue in the context of the Truth-in-Lending Act (TILA), and upheld a client's right to settle her statutory fee claim, even without the knowledge of her lawyer.  In *Zeisler,* an attorney brought a TILA claim on his client's behalf arising from her financing of a used car at a dealership.  On the heels of suit, the dealer repossessed the car, and when the client went to the dealer to retrieve property from the car, she and the dealer discussed settlement, and they signed an agreement that day.  The lawyer had not been consulted, and when he learned about the settlement, he moved for an award of attorneys' fees.  The client told the court that she assumed that she was responsible for paying her lawyer and was not seeking an award of fees from the court.  The trial court dismissed the attorney's fee petition, and the Seventh Circuit affirmed. The court found that under TILA, the entitlement to attorneys' fees belongs to the client and not the lawyer.  In *dictum,* the court noted that a lawyer may be able to protect himself from his client's waiver of fees without his knowledge by obtaining an assignment from his client.  If a defendant knows the client has assigned any future fee award to the lawyer but settles the right to a fee with the assignor, the lawyer could "go against the defendant" for the value of his claim as assignee.  *Id.* at 1002.[9]  *Cf. Pony v. Mitchell,* 433 F.3d 1138, 1142 (9th Cir. 2006) (finding

said *James* addressed only an attorney's standing to seek attorneys' fees as a quasi-subrogee of his client, and did not determine the validity or effect of a fee waiver by the client.  *Panola,* 844 F.2d at 1512 ("*James* is silent on the question of an attorney's right of action where the client has expressly waived any claim to attorneys' fees.")

[9]     In *Astrue v. Ratliff,* 130 S.Ct. 2521 (2010), the Supreme Court recognized the validity of assignments from a client to her lawyer of a fee claim under the Equal Access to Justice Act.  The

invalid a client's putative assignment to her lawyer of her *right* to seek attorneys' fees under 42 U.S.C. § 1988, but determining that once a prevailing party in a civil rights case *exercises her right* to receive fees, the attorney's right to collect them vests, and he may then pursue them on his own).[10]

### D. The circumstances presented warrant rescission of the settlement agreement.

The preceding analysis now brings the court to the final question it must resolve:  Given that Ms. Mathews's claim for statutory attorney fees belonged to her and that she generally had a right to compromise that claim, do the circumstances here present any reason not to enforce the settlement agreement Ms. Mathews entered with Bronger?

Ms. Mathews argues that when Bronger's counsel negotiated directly with Ms. Mathews on a subject (her attorney fee claim) about which counsel knew her to be represented by another lawyer, Bronger's counsel violated Indiana Rules of Professional Conduct 4.2 and 4.4.  And because of that violation, she argues the settlement agreement it produced should be nullified.[11] Ms. Mathews cites *In re Anonymous*, 819 N.E.2d 376 (Ind. 2004), in support, but that decision does not speak to the question presented here.  In that disciplinary action, the Commissioner found (and the Supreme Court agreed) that the respondent violated rules 4.2 and 4.4 when his client, with the respondent's apparent facilitation, obtained an affidavit from the client's co-

---

court found that because the fee award belongs to the client and because the government has a special statutory right to offset against the award any outstanding debts the client owes the government, the government may first determine whether it has a right of offset and, if not, the court may direct that the fee award be paid directly to the lawyer consistent with the assignment. *Id.* at 2529.

[10]    Nothing in this order is intended to address whatever obligations Ms. Mathews may have to Mr. Weldy under their fee agreement or under any applicable equitable principles.

[11]    As noted above, Ms. Mathews requested at the hearing that the court nullify only this part of the settlement agreement but hold Bronger to all the obligations it undertook.  That position, for the reasons already explained, is untenable.

defendant in a criminal case when the co-defendant was represented by counsel. The respondent had filed the affidavit in support of his motion to sever the trials of the two defendants. Immediately upon hearing that the co-defendant's counsel did not intend for her client to sign the affidavit and did not support the motion to sever, the respondent voluntarily withdrew the motion and the affidavit. The Indiana Supreme Court noted the respondent's withdrawal of the motion and affidavit as a mitigating factor in his discipline, but nothing in that decision ordered it as the *remedy* for the violation.

For its part, Bronger maintains that it did not violate the rules of conduct because Mr. Weldy had given his consent to speak directly with Ms. Mathews regarding offset of the two judgments and its earlier communications directed to Mr. Weldy made it clear that the offset it proposed encompassed her attorney fee claim. Mr. Weldy says that he meant his consent to extend only to the principal award, not to the attorney fee claim. As the court made plain at the hearing, Mr. Weldy's charge that Bronger violated the Rules of Professional Conduct is not for the court in this case to decide.[12]

The only question in this case on the pending motions is whether the settlement agreement Ms. Mathews and Bronger entered on May 6, 2011, is enforceable and therefore precludes an award of statutory attorney fees to the plaintiff. *In re Anonymous*, for the reasons just explained, does not provide a basis for the court to declare the agreement unenforceable, so the court now considers whether any other legal or equitable ground warrants a rescission or voiding of the settlement agreement.

Although it is not for this court to determine disciplinary matters, some of the circumstances underlying counsels' respective arguments about whether Bronger's counsel had

---

[12]     Mr. Weldy has apparently lodged a disciplinary complaint against Bronger's counsel.

the consent of Ms. Mathews's counsel to deal with her directly on all subjects covered by the proposed settlement agreement are relevant to the enforceability of the settlement agreement. Specifically, the court makes these observations about the evidence presented:

1. Bronger's counsel was clear in his February 22, 2011 correspondence to Mr. Weldy and Ms. Mathews that his offset proposal included the statutory award of a reasonable attorney fee, going so far (in the letter to Mr. Weldy) to include an analysis of the value of the fee claim.

2. Mr. Weldy did not respond to the February 22 letter, but in a later telephone conversation told Bronger's counsel that offset "made sense" and that Bronger's counsel could deal directly with Ms. Mathews on that. No one apparently mentioned the fee claim in this conversation, but the February 22 letter—which expressly included it as part of the offset proposal—should have caused Mr. Weldy to articulate the distinction he now says he intended. Mr. Weldy's failure in this regard put his client at a decided disadvantage. Bronger's counsel had made various assertions of the value of Ms. Bronger's attorney fee claim (to Mr. Weldy and presumably to Ms. Mathews) based on inaccurate statements of law.[13] Without the advice of counsel, Ms. Mathews could not be expected to estimate the value of this bargaining chip she held.

---

[13] For example, Seventh Circuit decisions make clear that the terms of the plaintiff's contingent fee contract with her attorney cannot influence the decision of the amount of a reasonable fee to which the plaintiff is entitled under a fee-shifting statute, *Pickett v Sheridan Health Care Center*, 2011 WL 6287923 (7th Cir. Dec. 15, 2011), and that in the fee-shifting context the court must assume where a party prevails and the damages are not nominal, that litigation was necessary to achieve "that particular result and limit itself to determining whether the hours spent were a reasonable means to that necessary end." *Anderson v. A.B. Painting and Sandblasting, Inc.*, 578 F.3d 542, 546 (7th Cir. 2009).

3.     Upon learning of Mr. Weldy's vociferous objection to the settlement agreement, Bronger's counsel offered, though somewhat ambiguously, to rescind it and start over. Consistent with his conduct throughout this matter, Mr. Weldy ignored that correspondence.

4.     Nevertheless, under all the circumstances in the case as of May 6, 2011, Bronger's counsel likely suspected that Mr. Weldy did not intend to consent to his client negotiating the fee claim without advice of counsel. Just days before, Mr. Weldy had filed a petition seeking over $20,000 in fees. Bronger's February 22 letter valued it at $300, and the final settlement agreement valued it at a small fraction of what Mr. Weldy had already requested.

5.     Moreover, the court is troubled by the disparity in the releases given by way of the settlement agreement. Without advice of counsel, Ms. Mathews agreed to a limited release by Bronger that leaves her vulnerable to Bronger's request in this case for tens of thousands of dollars in sanctions against her. *See* Dkt. 140 (Bronger's Motion for Sanctions).[14] The court also notes in this regard that Bronger's February 22 letter sent directly to Ms. Mathews did not mention its threat to request sanctions against her, a matter that may have caused her to seek counsel from Mr. Weldy or another lawyer before she gave up all her bargaining chips in return for a limited release from Bronger. This is a matter on which she is represented by counsel, and the ambiguity in the scope of the consent given to deal directly with her heightens the court's concern about the equities of her going it alone in the negotiation with Bronger's counsel with so much at stake.

The settlement agreement at issue is thus the product of ineffective communication by counsel for both sides, inattention and an ambiguous "consent" by Mr. Weldy, and Ms.

---

[14]     The sanctions request suggests a number of alternative awards as high as about $93,000 and as low as about $6000. *See* Dkt. 140.

Mathews's assent to compromise of a valuable right and to a limited release without advice of her counsel.

These circumstances convince the court that clear and unequivocal consent for Bronger's counsel to deal directly with Ms. Mathews was necessary. The ambiguity in the scope of that consent, caused in significant part by Mr. Weldy, produced a mutual mistake on the parts of both Bronger and Ms. Mathews. Consent was a vital fact upon which they based their bargain, and their mistake about the intended scope of that consent makes the settlement agreement voidable. *See, e.g., Perfect v McAndrew*, 798 N.E.2d 470, 478-79 (Ind. Ct. App. 2003). It is also noteworthy that both parties to the settlement agreement have at one time (though not at the same time) believed that rescission of the agreement could be appropriate under the circumstances. Bronger offered to rescind it as soon as Mr. Weldy objected to it; Ms. Mathews seeks its rescission in the filings at issue here.

The court therefore GRANTS Ms. Mathews's request to rescind the settlement agreement—the entire agreement as she requested in her original motion. *See* Dkt. 135, ¶ 10.

To be clear, nothing in this report and recommendation is intended to prevent Bronger and Ms. Mathews from entering a settlement agreement effecting an offset. Ms. Mathews can negotiate an agreement with the assistance of counsel (Mr. Weldy[15] or another lawyer if she so chooses), or she can instruct her counsel to give Bronger full and unequivocal consent to negotiate with her directly.

---

[15] Although the court does not purport to outline Mr. Weldy's professional responsibilities to Ms. Mathews, the court notes the discussion by the Supreme Court in *Evans v. Jeff D.,* 475 U.S. 717, 728 n.14 (1986), regarding an attorney's obligation not to allow his own financial interests to influence his professional advice.

## Conclusion

For the foregoing reasons, the magistrate judge recommends that the court find that the settlement agreement between Bronger and Ms. Mathews is void and should be rescinded. This will also result in the denial as moot of Ms. Mathews's motion to strike (Dkt. 135) Bronger's opposition to her motion for fees. The magistrate judge will set a briefing schedule for Bronger's substantive opposition to Ms. Mathews's motion for fees (Dkt. 126, supplemented at Dkt. 139) and any reply by Ms. Mathews, if appropriate, upon the acceptance, rejection, or modification of this report and recommendation.

The Clerk is directed promptly to mail a copy of this report and recommendation to each party in accordance with Fed. R. Civ. P. 72(a).

Any objections to this report and recommendation must be filed with the court in accordance with Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1) within 14 days of service. Failure to object will result in waiver of objection or appeal of the issues addressed in this report and recommendation.

So ORDERED.

Date: 12/29/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Zachary Judson Eichel
EINTERZ & EINTERZ
zach@einterzlaw.com

Michael L. Einterz
EINTERZ & EINTERZ
einterzfirm@aol.com

Michael L. Einterz Jr.
EINTERZ & EINTERZ
michael@einterzlaw.com

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com